UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PUBLIX SUPER MARKETS, INC.,

     Plaintiff,

v.

SNYDER'S-LANCE, INC.; HARTFORD
FIRE INSURANCE COMPANY; and
THE CONTINENTAL INSURANCE
COMPANY,

     Defendants.

_____/

SNYDER'S-LANCE, INC.,

     Third-Party Plaintiff,

v.

M. MONAHAN DISTRIBUTORS, LLC,

     Third-Party Defendant.

_____/

Case No. 3:24-cv-00864-MMH-MCR

### DEFENDANT/THIRD-PARTY PLAINTIFF'S, SNYDER'S-LANCE, INC., MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 2

    A. The "Continuing Guaranty and Indemnity Agreement (Products)" ...................... 2

    B. The Distributor Agreement and Personal Guaranty ................................................ 3

    C. The Certificate of Liability Insurance .................................................................... 4

    D. The Slip and Fall Incident ...................................................................................... 5

    E. Publix's Notice to Snyder's of the Incident ........................................................... 5

    F. The Underlying Premises Liability/Negligence Action .......................................... 7

    G. Publix's Notice to Snyder's of the Underlying Action .......................................... 8

    H. The Instant Breach of Contract Action and Third-Party Complaint ...................... 9

III. MEMORANDUM OF LAW AND ARGUMENT ........................................................ 10

    A. Federal Summary Judgment Standard .................................................................. 10

    B. Snyder's Owed No Duty to Defend the Underlying Action .................................. 11

        i. The Underlying Allegations Triggered No Defense Obligation ............... 12

        ii. The Agreement Narrowly Defines Any Defense Obligation ................... 13

        iii. Allegations of Sole Negligence Bar Any Defense Obligation ................. 14

        iv. The Record Confirms the Absence of Any Nexus to Snyder's ................ 15

        v. Publix's Position Improperly Expands the Contractual Trigger ............... 16

        vi. Summary Judgment Required Is When No Duty to Defend Was Triggered .................................................................................................... 17

    C. Snyder's Owed No Duty to Indemnify .................................................................. 17

        i. Indemnity Is Limited to Liability for Snyder's Conduct ......................... 18

        ii. The Record Establishes No Loss Arising from Snyder's Conduct ........... 18

        iii. The Claim Falls Squarely Within the Sole Negligence Exclusion ........... 19

        iv. Publix Cannot Expand the Indemnity Beyond the Contract ..................... 20

    D. Snyder's Fulfilled Its Duty to Procure Insurance ................................................. 20

        i. Publix Was Named as an Additional Insured as Required ........................ 21

        ii. Insurance Procurement Is Distinct from Claim Coverage ........................ 21

        iii. The Contract Does Not Extend to Publix's Own Negligence ................... 22

        iv. The Underlying Allegations Fall Outside the Procurement Scope ........... 22

i

       E.       Snyder's is Entitled to Contribution and Indemnity from Monahan ..................... 23

IV.     CONCLUSION.................................................................................................................. 24

ii

LEGAL\115789443\2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................................10, 11

*Armiger v. Associated Outdoor Clubs, Inc.*,
48 So. 3d 864 (Fla. 2d DCA 2010) ...................................................................................13, 14

*Budget Rent A Car Sys. v. Taylor*,
626 So. 2d 976 (Fla. 4th DCA 1993) ...................................................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 ....................................................................................................................10, 11

*Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co.*,
374 So. 2d 487 (Fla. 1979)..............................................................................................14

*Dep't of Transp. v. S. Bell Tel. & Tel. Co.*,
635 So. 2d 74 (Fla. 1st DCA 1994) ...........................................................................12, 13, 17

*Fid. & Guar. Ins. Co. v. Ford Motor Co.*,
707 F. Supp. 2d 1300 (M.D. Fla. 2010)..............................................................................12

*Final Expense Direct v. Python Leads, LLC*,
No. 8:23-cv-2093-WFJ-AAS, 2026 LX 14645 (M.D. Fla. Jan. 9, 2026)................................12

*Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*,
492 F. App'x 16 (11th Cir. 2012) ......................................................................................11

*Glasbrenner v. Cont'l Gen. Ins. Co.*,
17 Fla. L. Weekly Fed. D265 (U.S. M.D. Fla. January 26, 2004).........................................20

*Hagen v. Aetna Cas. & Sur. Co.*,
675 So. 2d 963 (Fla. 5th DCA 1996) ...................................................................................17

*Houdaille Indus., Inc. v. Edwards*,
374 So. 2d 490 (Fla. 1979)..............................................................................................23

*Jones v. Fla. Ins. Guar. Ass'n*,
908 So. 2d 435 (Fla. 2005)..............................................................................................15

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).........................................................................................................10

iii

*McKay v. State Farm Fire & Cas. Co.*,
   731 So. 2d 852 (Fla. 4th DCA 1999) ...................................................................21

*Mid-Continent Cas. Co. v. Royal Crane, LLC*,
   169 So. 3d 174 (Fla. 4th DCA 2015) ..............................................................15, 17

*Moton v. Cowart*,
   631 F.3d 1337 (11th Cir. 2011) ...........................................................................10

*Occidental Fire & Cas. Co. v. Dixie Way Motors, Inc.*,
   676 F. Supp. 3d 1240 (S.D. Fla. 2023) ................................................................17

*Paul N. Howard Co. v. Affholder, Inc.*,
   701 So. 2d 402 (Fla. 5th DCA 1997) ...................................................................23

*Phila. Indem. Ins. Co. v. Fla. Mem'l Univ.*,
   307 F. Supp. 3d 1343 (S.D. Fla. 2018) ................................................................11

*Rosati v. Vaillancourt*,
   848 So. 2d 467 (Fla. 5th DCA 2003) ...................................................................24

*Scott v. Harris*,
   550 U.S. 372 (2007)..............................................................................................10

*Starr Indem. & Liab. Co. v. Miami Chocolates, LLC*,
   337 F. Supp. 3d 1216 (S.D. Fla. 2018) ...........................................................12, 13

*Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*,
   913 So. 2d 528 (Fla. 2005)....................................................................................19

*U.S. v. Four Parcels of Real Prop. In Greene & Tuscaloosa Cntys. in State of
   Ala.*,
   941 F.2d 1428 (11th Cir. 1991) ...........................................................................11

*Univ. Plaza Shopping Ctr., Inc. v. Stewart*,
   272 So. 2d 507 (Fla. 1973)..............................................................................15, 16

## Other Authorities

Fed. R. Civ. P. 56(a) ...................................................................................................10

Federal Rule of Civil Procedure 56 ..............................................................................1

Local Rule 3.01.............................................................................................................1

iv

Defendant/Third-Party Plaintiff, Snyder's-Lance, Inc. ("Snyder's"), pursuant to Federal Rule of Civil Procedure 56 and Middle District of Florida Local Rule 3.01, files this Motion for Summary Judgment and Memorandum of Law in its favor and against Plaintiff, Publix Super Markets, Inc. ("Publix"), and against Third-Party Defendant, M. Monahan Distributors, LLC ("Monahan"), and states as follows:

## I.    INTRODUCTION

This is a breach-of-contract action arising from a premises-liability lawsuit filed against Publix by a non-party, Jeremiah Cooks ("Cooks"), following a slip and fall in Publix's stockroom. Publix seeks to shift defense, indemnity, and insurance-procurement obligations to Snyder's under a Continuing Guaranty and Indemnity Agreement for Snyder's products ("Guaranty Agreement"), while Snyder's seeks corresponding relief from Monahan under a Distributor Agreement and Personal Guaranty ("Distributor Agreement").

The question before the Court is a narrow one: whether the Guaranty Agreement is triggered by the allegations in the underlying complaint. Respectfully, it is not. Cooks asserted a single claim for premises negligence against Publix, alleging that he slipped on a wet stockroom floor. He does not attribute the incident to Snyder's employees, agents, or contractors, or to Snyder's products or equipment. He does not allege that any person or entity other than Publix caused or contributed to his injury.

Separately, indemnity agreements do not shift liability for a party's own alleged wrongdoing; they require reimbursement only for losses arising from the indemnitor's conduct—not losses arising solely from the indemnitee's negligence. Here, the

allegations fall squarely outside the scope of any obligation undertaken by Snyder's under the Guaranty Agreement. Accordingly, the Guaranty Agreement is not triggered. Even if it were, the indemnity provision expressly excludes claims caused solely by Publix's negligence—which is precisely what Cooks alleged and Publix ultimately paid to resolve.

Finally, Publix's insurance certificate and additional-insured arguments do not create a triable issue. The Guaranty Agreement required that Publix be added as an additional insured only for liability arising out of Snyder's products or services—not for Publix's own premises negligence. The Certificate of Liability Insurance ("Certificate") reflects coverage only to the extent required by written contract and subject to policy terms and conditions; it does not expand Snyder's obligations or create coverage where none exists.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The "Continuing Guaranty and Indemnity Agreement (Products)"[1]

1.    On March 3, 2017, Publix and Snyder's, a snack food manufacturer, entered into a Guaranty Agreement, which states in pertinent part as follows:[2]

> In consideration of Publix permitting Us (or our employees or agents) from time to time to enter upon Publix's premises to provide services or products or to place or maintain equipment on Publix's premises, We agree to indemnify and hold Publix harmless from any claim, suit, liability or loss arising in any manner out of the presence, services or other activities of any of our employees, agents or contractors or out of the performance, use or operation of our products or equipment, except to the extent such incident, occurrence or

---

[1] Ex. 1: March 3, 2017, Continuing Guaranty and Indemnity Agreement, at pg. 1 (hereinafter "Guaranty Agreement") (The Guaranty Agreement is specifically identified in its title as concerning "Products").

[2] Ex. 1: Guaranty Agreement, at pg. 1.

2

damage giving rise to the claim, suit or loss was caused solely by the negligence of Publix or Publix's employees, agents or contractors.
…
We agree to indemnify and hold Publix harmless from and assume responsibility and expense for any investigation, litigation and/or settlement of any complaint, claim or legal action.
Publix agrees to give prompt written notice of any such complaints, claims, or legal actions and to cooperate in the defense of such complaints, claims or legal actions.
The obligation to defend Publix stated herein is hereby deemed a separate and distinct obligation, fully severable from any other duty stated herein.
Our duty to indemnify Publix under this Agreement attaches to all Goods supplied to Publix by us and will not terminate with the termination of this Agreement.

### B.   The Distributor Agreement and Personal Guaranty

2.    On April 2, 2017, Snyder's entered into a Distributor Agreement with Monahan, an independent sales and distribution company, to distribute Snyder's products to various outlets, including Publix.[3]

3.    The Distributor Agreement stated that Monahan "is an independent contractor and business and solely liable for all labor, equipment, materials, costs and expenses necessary and/or incurred in connection with the performance of [the Distributor Agreement]."[4] The Distributor Agreement stated that Monahan's employees and/or agents were *not* Snyder's employees and/or agents.[5] The Distributor Agreement separately provides that Monahan was solely responsible for its employees and/or agents, including their training, supervision, and performance of their work.[6]

---

[3] Ex. 2: April 2, 2017, Distributor Agreement and Personal Guaranty, at pgs. 1-4 (hereinafter "Distributor Agreement").
[4] Ex. 2: Distributor Agreement, at pg. 1.
[5] Ex. 2: Distributor Agreement, at pgs. 3, ¶¶ A-B and E; 6, ¶¶ G-H; and 32, ¶ B.
[6] Ex. 2: Distributor Agreement, at pgs. 3, ¶ B; 5, ¶¶ B-C; and 6, ¶ G.

4.     The Distributor Agreement provides that title to, and ownership of, the products passed to Monahan upon Monahan's receipt of the products, and that Monahan held distribution rights within the defined territory, subject to the Distributor Agreement's terms.[7]

5.     The Distributor Agreement explains that Monahan was required to maintain worker's compensation and commercial general liability insurance policies and that such policies were primary with respect to any other insurance providing coverage to Snyder's.[8]

6.     The Distributor Agreement included a comprehensive hold harmless and indemnification provision by Monahan in favor of Snyder's.[9]

### C.     The Certificate of Liability Insurance

7.     On September 29, 2017, insurance producer McGriff, Seibels & Williams of Georgia, Inc. ("McGriff") issued the Certificate naming Snyder's as the insured, Publix as the Certificate Holder, and Hartford Fire Insurance Company ("Hartford") and Continental Casualty Company ("Continental") as insurers A and B, respectively, for the policy period of October 1, 2017, through October 1, 2018.[10]

8.     In this regard, the Guaranty Agreement stated in pertinent part as follows:

> We agree to include Publix and its employees as additional insured under our Commercial General Liability policy with respect to liability due to injury or

---

[7] Ex. 2: Distributor Agreement, at pgs. 4, ¶ A; and 9, ¶ A.
[8] Ex. 2: Distributor Agreement, at pgs. 19-20, ¶ A.
[9] Ex. 2: Distributor Agreement, at pg. 20, ¶ B.
[10] Ex. 3: September 29, 2017, Certificate of Liability Insurance, at pg. 1 (hereinafter "Certificate").

4

LEGAL\115789443\2

damage arising out of the purchase, rental, use or sale by Publix of any product or service provided by us.[11]

9.  The Certificate specifically states that "Publix Super Markets is included as additional insured to that extent required by written contract, subject to policy terms and conditions" under Hartford's Commercial General Liability and Auto Liability policies, and under Continental's Umbrella Liability policy.[12]

10.  The Certificate is stamped by Publix Risk Management as follows: "RECEIVED OCT 06 2017 Publix Risk Management."[13]

**D.    The Slip and Fall Incident**

11.  On November 20, 2017, Cooks, a helper for Monahan, slipped and fell in the back stockroom at Publix store number 668, located at 410 Blanding Boulevard, Orange Park, Florida, sustaining personal injuries (the "Incident").[14]

**E.    Publix's Notice to Snyder's of the Incident**

12.  On June 19, 2019, Claim Consultant for Publix, Bill Rodriguez ("Rodriguez"), emailed a Customer Vice President for Snyder's, Carlton Golden ("Golden"), about the "incident in the event Mr. Cooks has/had any worker's compensation benefits available to him."[15]

---

[11] Ex. 2: Guaranty Agreement, at pg. 1.
[12] Ex. 3: Certificate, at pg. 1.
[13] Ex. 3: Certificate, at pg. 1.
[14] Ex. 4: Cooks' Amended Complaint at pgs. 1, ¶ 4; 2, ¶ 8; and 3, ¶ 9.
[15] Ex. 5: June 19, 2019, Email with attachment from Bill Rodriguez to Carlton Golden, at pg. 2.

LEGAL\115789443\2

13.    On June 20, 2019, Senior Paralegal for Snyder's, Walt Connor ("Connor"),[16] responded to Rodriguez asking for additional information, and Rodriguez replied that "[t]he case is not in suit. Publix is merely putting Snyder's on notice of the incident at this time."[17]

14.    On January 10, 2020, Rodriguez emailed Connor asking if worker's compensation benefits will be available to Cooks, and Connor replied that he would be in touch with the worker's compensation team to investigate.[18]

15.    On February 19 and 20, 2020, Connor emailed Rodriguez advising that all human resource systems had been checked and no one with Cooks' name had been identified, neither on the company's current nor terminated rosters.[19] Rather, since Cooks was not a Snyder's employee, he was likely working for an independent distributor, and that Rodriguez should verify Cooks' employer through his counsel and to advise if Rodriguez learned information different from what appeared in Snyder's human resource systems.[20]

16.    The same day, Rodriguez asked Connor where a tender letter should be directed, and Connor replied to Rodriguez advising to send it to the independent distributor that employed Cooks because they are not an agent or employee of Snyder's.[21] Further, Connor advised Rodriguez that should he choose to send a tender

---

[16] At that time, Mr. Connor was working for what would be the ultimate parent company for Snyder's—Campbell Soup Company—now known as The Campbell's Company.

[17] Ex. 6: June 20, 2019, Emails between Walt Connor and Bill Rodriguez, at pgs. 1-2.

[18] Ex. 7: January 10, 2020, Emails between Bill Rodriguez and Walt Connor, at pgs. 1-2.

[19] Ex. 8: February 19-20, 2020, Emails between Walt Connor and Bill Rodriguez, at pgs. 1-2.

[20] Ex. 8: February 19-20, 2020, Emails between Walt Connor and Bill Rodriguez, at pg. 2.

[21] Ex. 8: February 19-20, 2020, Emails between Walt Connor and Bill Rodriguez, at pg. 2.

LEGAL\115789443\2

to Snyder's, to direct it to Connor's attention.[22]

17.    On March 12, 2020, Rodriguez emailed Connor asking if Cooks' name would appear on a list of employees who had quit or resigned, and Connor replied that all indications in Snyder's records showed that Cooks was an independent distributor who was in no way a direct or associated employee.[23]

**F.    The Underlying Premises Liability/Negligence Action[24]**

18.    On March 30, 2020, Cooks filed a premises liability action in the Fourth Judicial Circuit for Duval County, Florida, Case No. 2020-CA-001931, alleging one count of negligence against Publix (the "Underlying Action").[25]

19.    Cooks alleges that "while walking in the warehouse, [he] slipped and fell on a clear, slippery, liquid substance on [Publix's] warehouse floor."[26]

20.    Cooks further alleges that at all times he was a "business invitee" of Publix, working for a distributor of Snyder's products, "substituting for the actual representative/agent of the vendors."[27]

21.    Cooks alleges that Publix created a hazardous and dangerous condition that was known to Publix and its employees who negligently failed to maintain the

---

[22] Ex. 8: February 19-20, 2020, Emails between Walt Connor and Bill Rodriguez, at pg. 1.

[23] Ex. 9: March 12, 2020, Emails between Bill Rodriguez and Walt Connor, at pgs. 1-2.

[24] Approximately four years after Cooks initiated litigation against Publix, Publix sought leave to file a third-party complaint against Snyder's, which the Court denied. Instead, the Court permitted Publix to identify Snyder's only as a *Fabre* defendant at trial. Publix therefore had the opportunity to proceed to trial and seek an allocation of fault to Snyder's but elected not to do so. Publix likewise could have pursued an independent action against Snyder's at that time but chose not to.

[25] Ex. 10: Cooks' Complaint, at pg. 1. (Cooks' Amended Complaint dated February 9, 2023, is the operative pleading in the Underlying Action (hereinafter, "Cooks Am. Compl.")).

[26] Ex. 4: Cooks Am. Compl., at pg. 3, ¶ 9.

[27] Ex. 4: Cooks Am. Compl., at pg. 2, ¶ 7.

7

warehouse floor, foreseeably leading to Cooks' fall and serious injuries.[28]

22.     Cooks alleges that Publix:

> [W]as the possessor, operator and manager of the Publix Store that included the warehouse for the storage of food, wine, beverages and other merchandise received from [Publix's] vendors for resale in the Publix store. At all times material, [Publix] and its employees were in charge of the operations of the Publix Store and its warehouse.[29] [30]

**G.     Publix's Notice to Snyder's of the Underlying Action**

23.     On February 6, 2024, counsel for Publix in the Underlying Action, Wicker Smith, et al., notified Snyder's of the Underlying Action and requested defense and indemnification under the Guaranty Agreement.[31]

24.     On February 8, 2024, Litigation Counsel for Snyder's, Todd Hutchison ("Hutchison"), notified Wicker Smith that its representation of Publix presented a conflict of interest and requested that Publix withdraw the tender, to which Wicker Smith confirmed it would not be pursuing the tender.[32]

25.     On May 31, 2024, substitute counsel for Publix in the Underlying Action, Hall Booth Smith, requested defense and indemnification under the Guaranty Agreement.[33]

---

[28] Ex. 4: Cooks Am. Compl., at pg. 3, ¶¶ 10-11.

[29] Ex. 4: Cooks Am. Compl. at pg. 2, ¶ 5.

[30] Ex. 11: Deposition Transcript of Steven Simon Foster, at pgs. 12:1-2; 15:11-13; 16-18; 17:20-25; 18:1-2; 20:5-15; 24:13-15; and Ex. A to Foster Dep.: "Cleaning Up Spills and Other Potential Safety Hazards" (hereinafter "Foster Dep."). Publix's corporate representative in the Underlying Action stated in deposition that Publix's own policies required that spills not be left unattended, that warnings be placed, and that the area be dried—yet he also testified that here, a Publix employee failed to follow those procedures and left a wet floor without cones or supervision before Cooks' fall.

[31] Ex. 12: February 6, 2024, Letter from Wicker Smith to Snyder's, at pg. 2.

[32] Ex. 13: February 8, 2024, Emails between Wicker Smith and Todd Hutchison, at pgs. 1-2.

[33] Ex. 14: May 31, 2024, Letter from Hall Booth Smith to Snyder's, at pg. 1.

26.     On June 7, 2024, Hutchison responded to Hall Booth Smith's tender demand, explaining that Snyder's never had a relationship with Cooks and that Cooks was employed or engaged by independent distributors.[34] Further, Cooks alleged that Publix's sole negligence caused his injuries, which falls into the Guaranty Agreement's indemnity exception.[35]

27.     On August 26, 2024, counsel for Publix in the instant action, Gunster, notified Snyder's of mediation in the Underlying Action.[36] Hutchison responded that Snyder's position remained the same as stated in its June 7, 2024, correspondence to Hall Booth Smith, stating specifically that "Publix has provided nothing in response to make us think we should reconsider."[37]

28.     On August 29, 2024, Cooks and Publix settled at mediation, wherein Publix paid Cooks $3,000,000 to resolve his premises negligence action against Publix.[38]

### H.     The Instant Breach of Contract Action and Third-Party Complaint

29.     Shortly before the mediation settlement, Publix filed the instant action on August 21, 2024, against Snyder's, Hartford, and Continental, asserting claims for breach of contract and alleged failures to defend, indemnify, and procure insurance.[39]

30.     On March 7, 2025, Snyder's filed a Third-Party Complaint against

---

[34] Ex. 15: June 7, 2024, Letter from Snyder's to Hall Booth Smith, at pg. 1.
[35] Ex. 15: June 7, 2024, Letter from Snyder's to Hall Booth Smith, at pg. 1.
[36] Ex. 16: August 26, 2024, Emails between Gunster and Hutchison, at pgs. 1-2.
[37] Ex. 16: August 26, 2024, Emails between Gunster and Hutchison, at pgs. 1-2.
[38] Ex. 17: Deposition Transcript of Michelle Finley, at pg. 156:8-12 (hereinafter "Finley Dep.").
[39] Ex. 18: Publix's Amended Complaint, dated October 8, 2024, is the operative pleading in the instant action [ECF No. 22] (hereinafter "Publix Am. Compl.").

9

Monahan, asserting that to the extent Snyder's faces liability to Publix, such liability arises from Monahan's obligations under the Distributor Agreement.[40]

## III. MEMORANDUM OF LAW AND ARGUMENT
### A. Federal Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). When the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a *lack of evidence* to support the essential elements that the non-moving party must prove at trial." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23)). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other

---

[40] Ex. 19: Snyder's Third-Party Complaint [ECF No. 59], at pgs. 12, ¶ 34; and 13, ¶ 37.

similar material *negating* the opponent's claim….'" *U.S. v. Four Parcels of Real Prop. In Greene & Tuscaloosa Cntys. in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp.*, 477 U.S. at 323) (emphasis in original). "If the nonmoving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* at 1438 (quoting *Celotex*, 477 U.S. at 323) (internal citation omitted). "All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Phila. Indem. Ins. Co. v. Fla. Mem'l Univ.*, 307 F. Supp. 3d 1343, 1346 (S.D. Fla. 2018). But, "[a]n issue is not 'genuine' if it is *unsupported by the evidence* or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 27 (11th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249-50). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* (quoting *Anderson*, 477 U.S. at 252).

### B.   Snyder's Owed No Duty to Defend the Underlying Action

Publix's claim for breach of the duty to defend fails for a single, dispositive reason: the underlying complaint alleges Publix's sole negligence; it never alleges or even suggests that the Incident arose out of any other parties' conduct, let alone

Snyder's products, personnel, or operations.[41] Because the duty to defend arises solely from the parties' contract and is triggered, if at all, by the allegations of the underlying complaint, Snyder's owed no duty to defend as a matter of law. *Dep't of Transp. v. S. Bell Tel. & Tel. Co.*, 635 So. 2d 74, 78 (Fla. 1st DCA 1994). Although courts often analyze the duty to defend in the insurance context—where the obligation is construed broadly—in the context of a contract between non-insurers, the duty exists only to the extent defined by the parties' agreement. *Fid. & Guar. Ins. Co. v. Ford Motor Co.*, 707 F. Supp. 2d 1300, 1313 (M.D. Fla. 2010). A duty to defend is purely contractual and is determined according to the plain language of the agreement and the allegations of the underlying complaint at the time it was filed. *See Budget Rent A Car Sys. v. Taylor*, 626 So. 2d 976, 978 (Fla. 4th DCA 1993); *Dep't of Transp.*, 635 So. 2d at 78.

### i.    The Underlying Allegations Triggered No Defense Obligation

Applying this rule here, the allegations of Cooks' complaint do not implicate any party other than Publix and do not implicate Snyder's in any way that triggers a defense obligation.[42] *Starr Indem. & Liab. Co. v. Miami Chocolates, LLC*, 337 F. Supp. 3d 1216, 1222 (S.D. Fla. 2018) (holding duty to defend arises "solely from the allegations in the [underlying] complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses."); *see also Final Expense Direct v. Python Leads, LLC,* No. 8:23-cv-2093-WFJ-AAS, 2026 LX 14645 (M.D. Fla. Jan. 9, 2026) (holding that an indemnity agreement is construed to

---

[41] Ex. 4: Cooks Am. Compl., at pg. 1, ¶¶ 11-15; Ex. 10: Cooks' Compl., at pg. 1, ¶¶ 11-16.
[42] Ex. 4: Cooks Am. Compl., at pg. 1, ¶¶ 11-15; Ex. 10: Cooks Compl., at pg. 1, ¶¶ 11-16.

LEGAL\115789443\2

cover only those liabilities reasonably contemplated by the parties). Specifically, Cooks alleges that he slipped on a liquid substance on Publix's warehouse floor and that Publix, as the possessor and operator of the premises, negligently failed to maintain a safe condition, which is a non-delegable duty.[43] *Armiger v. Associated Outdoor Clubs, Inc.*, 48 So. 3d 864, 875 (Fla. 2d DCA 2010). There are no allegations that the Incident arises out of Snyder's employees, agents, or contractors, or from the performance, use, or operation of Snyder's products or equipment.[44] The absence of such allegations is dispositive. Under the express terms of the Guaranty Agreement, any obligation to defend is tied to claims "arising out of" Snyder's presence, services, personnel, or products.[45] Where the complaint alleges only Publix's independent premises negligence, the contractual trigger is not met. *Starr Indem. & Liab. Co.*, 337 F. Supp. 3d at 1222. Therefore, there is no matter of factual dispute, as it is apparent from the face of the complaint itself, and consequently, the Guaranty Agreement does not apply.

### ii.    The Agreement Narrowly Defines Any Defense Obligation

The Guaranty Agreement confirms that the contractual language narrowly defines rather than expands any defense obligation.[46] Even though the Guaranty Agreement provides that the duty to defend is "separate and distinct," that obligation is not boundless.[47] *Dep't of Transp.*, 635 So. 2d at 78. It remains tethered to the same

---

[43] Ex. 4: Cooks Am. Compl. at pgs. 2, ¶ 5; 3-4, ¶¶ 9-11; Ex. 10: Cooks Compl., at pgs. 2, ¶ 5; and 3-4, ¶¶ 9-11.
[44] Ex. 4: Cooks Am. Compl., at pg. 1, ¶¶ 9-11; Ex. 10: Cooks Compl., at pg. 1, ¶¶ 9-11.
[45] Ex. 1: Guaranty Agreement, at pg. 1.
[46] Ex. 1: Guaranty Agreement, at pg. 1.
[47] Ex. 1: Guaranty Agreement, at pg. 1.

operative language governing indemnity—*i.e.*, liability "arising out of" Snyder's products, services, or personnel.[48] Nothing in the Guaranty Agreement converts Snyder's into an insurer of Publix's premises liability, which again, is a non-delegable duty. *Armiger*, 48 So. 3d at 875. To the contrary, the language reflects a limited risk allocation: Snyder's agreed to defend claims connected to its own operations or products—not claims based solely on Publix's conduct as the property owner.[49] A contrary reading would improperly rewrite the contract and expand Snyder's obligations beyond those for which it bargained. *Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co.*, 374 So. 2d 487, 489-90 (Fla. 1979) (holding indemnity provisions disfavored when they purport to cover an indemnitee's own or joint wrongdoing).

### iii.    Allegations of Sole Negligence Bar Any Defense Obligation

Even if the Court were to look beyond the absence of a triggering allegation, Cooks' complaint affirmatively places the claim within the Guaranty Agreement's express exclusion for claims "caused solely by the negligence of Publix."[50] Cooks alleged that Publix created and failed to remedy a dangerous condition on its warehouse floor.[51] No allegation suggested shared fault attributable to Snyder's or any other party. Because the allegations, as pleaded, fall squarely within the sole negligence exclusion, the Guaranty Agreement foreclosed any obligation to defend as

---

[48] Ex. 1: Guaranty Agreement, at pg. 1.
[49] Ex. 1: Guaranty Agreement, at pg. 1.
[50] Ex. 1: Guaranty Agreement, at pg. 1.
[51] Ex. 4: Cooks Am. Compl., at pgs. 3, ¶¶ 10-11; 3-4, ¶ 12; Ex. 10: Cooks Compl., at pgs. 3, ¶¶ 10-11; 3-4, ¶ 12.

14

a matter of law. *Univ. Plaza Shopping Ctr., Inc. v. Stewart*, 272 So. 2d 507, 509 (Fla. 1973).

### iv.    The Record Confirms the Absence of Any Nexus to Snyder's

The undisputed factual record confirms what the pleadings make clear: the Incident has no connection to Snyder's products, personnel, or operations. Publix's own corporate representative expressly disclaims any contention that Snyder's caused the condition at issue.[52] The admissions are dispositive. Publix does not contend that the condition arose out of Snyder's products or any act or omission of Snyder's personnel—precisely the showing required to trigger any defense obligation under the Guaranty Agreement.[53] Rather, Publix's liability theory as to Snyder's is based on nothing more than appearances.[54] *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 443 (Fla. 2005) (holding that "insured's version of the facts" are not determinative of the duty to defend). The undisputed testimony establishes that Cooks was not a Snyder's employee, agent, or contractor, but rather worked for an independent distributor.[55] Consistent with this structure, Snyder's records confirmed that Cooks was "in no way a direct or associated employee" of Snyder's.[56] At most, the testimony shows that a distributor's worker was present in the store—a circumstance that is insufficient, as a matter of law, to trigger any contractual duty to defend.[57] *See Mid-Continent Cas. Co. v.*

---

[52] Ex. 17: Finley Dep., at pg. 41:8-11; 41:20-22.
[53] Ex. 1: Guaranty Agreement, at pg. 1.
[54] Ex. 17: Finley Dep., at pg. 67:10-19.
[55] Ex. 20: Deposition Transcript of Michael Monahan, at pgs. 38:11-17; 20:19-25 (hereinafter "Monahan Dep.").
[56] Ex. 9: March 12, 2020, Emails between Bill Rodriguez and Walt Connor, at pg. 1.
[57] Ex. 20: Monahan Dep., at pg. 69:3-6.

LEGAL\115789443\2

*Royal Crane, LLC*, 169 So. 3d 174, 179 (Fla. 4th DCA 2015).

The testimony of Monahan's corporate representative further confirms that Cooks was employed, directed, and compensated by the independent distributor—not Snyder's.[58] The Distributor Agreement reflects this structure, and the testimony confirms it in practice. Monahan's testimony eliminates any basis to treat Cooks as a Snyder's employee, agent, or contractor. At most, it confirms that he was working for an independent distributor delivering Snyder's branded products, which limits any defense obligation to claims arising out of Snyder's own personnel or operations. These facts, while not required to resolve the duty to defend issue, reinforce the same conclusion compelled by the pleadings, that the Incident did not arise out of Snyder's products or operations, thus falling outside the scope of any defense obligation.

### v.    Publix's Position Improperly Expands the Contractual Trigger

The gravamen of Publix's theory depends on collapsing the contractual requirement that liability "arise out of" Snyder's conduct into the mere presence of a distributor within the store.[59] But the Guaranty Agreement does not support such an expansive reading. *See Univ. Plaza Shopping Ctr., Inc.*, 272 So. 2d at 511 ("A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts *unless such intention is expressed in clear and unequivocal terms….*"). Accepting Publix's position would effectively transform Snyder's into a general indemnitor and defender for any incident occurring in Publix's facilities so

---

[58] Ex. 20: Monahan Dep., at pg. 69:3-6.
[59] Ex. 1: Guaranty Agreement, at pg. 1.

16

long as a distributor happened to be present. Nothing in the Guaranty Agreement supports such a fallacious interpretation.

### vi.    Summary Judgment Required Is When No Duty to Defend Was Triggered

The duty to defend is determined by the allegations of the underlying complaint, and because those allegations do not implicate Snyder's products, personnel, or operations, no duty to defend is triggered.[60] *Dep't of Transp.*, 635 So. 2d at 78. Moreover, these same allegations place the underlying matter squarely within the carve out for Publix's sole negligence.[61]  The undisputed record only confirms this conclusion. Accordingly, there is no genuine issue of material fact, and Snyder's is entitled to judgment as a matter of law on Publix's claim for breach of the duty to defend.

### C.    Snyder's Owed No Duty to Indemnify

Under Florida law, any obligation to indemnify is determined based on the actual facts giving rise to liability and the terms of the parties' agreement. *Occidental Fire & Cas. Co. v. Dixie Way Motors, Inc.*, 676 F. Supp. 3d 1240, 1248 (S.D. Fla. 2023) (following *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). Unlike the duty to defend, which is assessed based on the allegations of the underlying complaint, the duty to indemnify depends on whether the loss at issue *in fact* falls within the scope of the contractual indemnity provision. *See Mid-Continent Cas. Co.*, 169 So. 3d at 179. Here, it does not.

---

[60] Ex. 4: Cooks Am. Compl., at pg. 1, ¶¶ 9-11; Ex. 10: Cooks Compl., at pg. 1, ¶¶ 9-11.
[61] Ex. 1: Guaranty Agreement, at pg. 1.

### i.    Indemnity Is Limited to Liability for Snyder's Conduct

The Guaranty Agreement requires indemnity only for claims "arising out of" Snyder's products, personnel, or operations.[62] It does not obligate Snyder's to indemnify Publix for Publix's own independent negligence—and, to the contrary, expressly excludes claims "caused solely by the negligence of Publix."[63] Thus, two independent limitations govern: (1) the claim must arise out of Snyder's conduct; and (2) indemnity is barred where the loss is caused solely by Publix.[64] Here, Publix cannot satisfy either requirement.

### ii.    The Record Establishes No Loss Arising from Snyder's Conduct

The undisputed factual record forecloses any argument that Cooks' injuries arose out of Snyder's products, personnel, or operations. As established above, Publix has disclaimed any contention that Snyder's product caused the condition or that any Snyder's employee created it.[65] These admissions are not merely relevant to the duty to defend—they are dispositive of the indemnity analysis, which turns on the actual facts giving rise to the loss. Nor does the record support any theory that Cooks was acting on behalf of Snyder's. At most, the record establishes that Cooks was present in the store delivering Snyder's branded products.[66] That fact alone is insufficient, as a matter of law, to establish that the Incident "arose out of" Snyder's operations—particularly where the condition causing the fall was unrelated to any Snyder's product

---

[62] Ex. 1: Guaranty Agreement, at pg. 1.
[63] Ex. 1: Guaranty Agreement, at pg. 1.
[64] Ex. 1: Guaranty Agreement, at pg. 1.
[65] Ex. 17: Finley Dep., at pg. 41:8-11; 41:20-22.
[66] Ex. 20: Monahan Dep., at pg. 23:1-5.

18

and was not created by any Snyder's personnel.[67] *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So. 2d 528, 533 (Fla. 2005) (holding that "arising out of" requires some level of causation greater than coincidence). Because the required causal nexus is absent, the indemnity provision is not triggered.[68] *Id.*

### iii.   The Claim Falls Squarely Within the Sole Negligence Exclusion

Even if Publix could establish some tenuous connection to Snyder's operations—which it cannot—the claim independently falls within the Guaranty Agreement's express exclusion for losses "caused solely by the negligence of Publix."[69] Both the allegations of the underlying complaint and the undisputed record establish that Publix alone created and controlled the condition at issue. Specifically, Cooks alleged that Publix, as the possessor and operator of the premises, failed to maintain a safe condition on its warehouse floor.[70] The record confirms this theory. A Publix employee created the spill.[71] Publix employees are responsible for maintaining the stockroom and addressing spills, including warning of the risk.[72] Publix does not contend that Snyder's had a role in creating the liquid condition.[73] Accordingly, the loss for which Publix seeks reimbursement falls squarely within the Guaranty

---

[67] Ex. 1: Guaranty Agreement, at pg. 1; Ex. 17: Finley Dep., at pg. 41:8-11; 41:20-22.
[68] Ex. 21: Publix's Answer and Affirmative Defenses dated March 22, 2022, at pg. 4; Ex. 22: Publix's Answer and Affirmative Defenses to Amended Complaint, dated April 27, 2023, at pg. 4. (Publix affirmatively represented in 2022 and 2023 that it was not aware of any third parties that might be liable to Cooks).
[69] Ex. 1: Guaranty Agreement, at pg. 1.
[70] Ex. 4: Cooks Am. Compl., at pgs. 2, ¶ 5; 3-4, ¶ 11; Ex. 10: Cooks Compl., at pgs. 2, ¶ 5; 3-4, ¶ 11.
[71] Ex. 17: Finley Dep., at pg. 13:10-13.
[72] Ex. 17: Finley Dep., at pg. 16:1-5.
[73] Ex. 17: Finley Dep., at pg. 41:8-11; 41:20-22.

19

Agreement's sole negligence carve-out, independently precluding indemnity.[74]

### iv.    Publix Cannot Expand the Indemnity Beyond the Contract

Publix's indemnity theory improperly attempts to expand the contract's scope by equating the presence of a distributor's worker with liability "arising out of" Snyder's conduct. But the Guaranty Agreement does not support such an expansive reading. If accepted, Publix's position would require Snyder's to indemnify Publix for any incident occurring in its stores whenever a distributor happened to be present—regardless of whether Snyder's had any involvement in the events giving rise to the injury. Nothing in the Guaranty Agreement supports such a mistaken interpretation.

### D.    Snyder's Fulfilled Its Duty to Procure Insurance

The Guaranty Agreement requires Snyder's to include Publix as an additional insured under its Commercial General Liability policy, only to the extent of liability "arising out of" Snyder's products or services—not Publix's independent premises liability.[75] Snyder's satisfies this obligation by naming Publix as an additional insured consistent with the contract's scope, as evidenced by the Certificate.[76] Publix's own expert confirms that the Certificate reflects compliance with the contractual requirement.[77] Any dispute over whether a particular claim falls within coverage is a separate insurance issue and does not establish a breach of the procurement obligation. *See Glasbrenner v. Cont'l Gen. Ins. Co.*, 17 Fla. L. Weekly Fed. D265 (U.S. M.D. Fla.

---

[74] Ex. 1: Guaranty Agreement, at pg. 1.
[75] Ex. 1: Guaranty Agreement, at pg. 1.
[76] Ex. 3: Certificate, at pg. 1.
[77] Ex. 23: Deposition Transcript of Thomas Paine, at pg. 72:8-14 (hereinafter "Paine Dep.").

20

January 26, 2004). Snyder's obligation is limited to providing additional-insured status "with respect to liability" arising out of its products or services.[78] This "arising out of" requirement confines coverage to Snyder's operations and excludes Publix's standalone premises negligence.[79]

### i.    Publix Was Named as an Additional Insured as Required

The Certificate identifies Snyder's as the insured, Publix as the certificate holder, and Hartford and Continental as carriers for the applicable policy period, and states that Publix is included as an additional insured "to that extent required by written contract, subject to policy terms and conditions."[80] Publix stamped the Certificate as received, confirming delivery.[81] Publix's expert further acknowledges that the Certificate reflects in-force coverage and confirms that Publix was named as an additional insured consistent with the Guaranty Agreement.[82] Issued by an authorized agent, the Certificate serves as evidence that the required policies were placed and that Publix received proof of coverage.[83]

### ii.    Insurance Procurement Is Distinct from Claim Coverage

Whether a claim triggers defense or indemnity depends on policy terms and allegations and is distinct from whether insurance was procured. _McKay v. State Farm Fire & Cas. Co._, 731 So. 2d 852, 855 (Fla. 4th DCA 1999). Publix's expert expressly

---

[78] Ex. 3: Certificate, at pg. 1.
[79] Ex. 24: Deposition Transcript of Neal Bordenave, at pgs. 82:20-25; 125:10-14; and 19-24 (hereinafter "Bordenave Dep.").
[80] Ex. 3: Certificate, at pg. 1.
[81] Ex. 3: Certificate, at pg. 1.
[82] Ex. 23: Paine Dep., at pgs. 39:13-18; 72:8-14.
[83] Ex. 23: Paine Dep., at pgs. 37:10-19; 39:2-8; 73:17-22.

LEGAL\115789443\2

agrees and offers no opinion that Snyder's failed to obtain the required coverage or additional-insured status, eliminating any dispute as to compliance with the procurement obligation.[84]

### iii.    The Contract Does Not Extend to Publix's Own Negligence

Both the Guaranty Agreement and the Certificate limit additional-insured status to liability arising out of Snyder's products or services; they do not extend to Publix's independent premises liability.[85] The expert testimony confirms that additional-insured coverage is tied to the named insured's operations and does not encompass Publix's failure to maintain its premises.[86]

### iv.    The Underlying Allegations Fall Outside the Procurement Scope

Cooks' complaint alleges Publix's sole premises negligence and does not implicate Snyder's products, equipment, or personnel.[87] Because the claim does not arise out of Snyder's operations, it falls outside the scope of the additional-insured coverage Snyder's was required to procure. Snyder's thus fulfills its contractual obligation by naming Publix as an additional insured and providing a Certificate evidencing placement and receipt.[88] Publix's expert confirms there was no failure to procure required coverage. Any coverage dispute does not alter this completed performance. Accordingly, Snyder's is entitled to summary judgment on Publix's procurement claim.

---

[84] Ex. 23: Paine Dep., at pgs. 71:19-25; 72:1-2; 72:8-14; 73:17-22.
[85] Ex. 24: Bordenave Dep., at pgs. 24:11-16; 82:5-10; 117:22-25; 118-1-3; 125:10-13.
[86] Ex. 24: Bordenave Dep., at pg. 82:5-10.
[87] Ex. 4: Cooks Am. Compl., at pg. 3, ¶¶ 10-11; and Ex. 10: Cooks Compl., at pg. 3, ¶¶ 10-11.
[88] Ex. 3: Certificate, at pg. 1; Ex. 23: Paine Dep., at pg. 72:8-14.

### E.   Snyder's is Entitled to Contribution and Indemnity from Monahan

Even if the Court were to conclude that Snyder's could be held liable to Publix—which the undisputed record does not support—Snyder's is entitled to recover from Monahan as a matter of law based on the parties' Distributor Agreement and the undisputed allocation of responsibility between them. The Distributor Agreement makes clear that Monahan operated as an independent contractor and was solely responsible for its personnel, including their training, supervision, and performance of work.[89] It further provides that Monahan bore responsibility for all labor, equipment, and expenses associated with its operations, and that its employees and agents were not employees or agents of Snyder's.[90] The Distributor Agreement further includes an indemnification obligation running in favor of Snyder's—that includes Publix's claims against Snyder's.[91]

The undisputed record aligns with this contractual structure. Cooks was not a Snyder's employee, agent, or contractor, but instead worked for Monahan, which controlled his work and compensation.[92] *See Paul N. Howard Co. v. Affholder, Inc., 701 So. 2d 402, 404 (Fla. 5th DCA 1997)*. Thus, any purported link between the Incident and delivery activity reflects only coincidental presence—not a causal connection sufficient to establish that the claim "arose out of" Snyder's operations—and, at most, relates to the independent conduct of Monahan's personnel. *See Houdaille Indus., Inc.*

---

[89] Ex. 2: Distributor Agreement, at pgs. 3, ¶¶ A-E, G; 5, ¶ B; 6, ¶¶ G-H; 32, ¶ C.
[90] Ex. 2: Distributor Agreement, at pgs. 1, ¶ 5; 3, ¶¶ A-B, E; 5, ¶ B; 6, ¶ G.
[91] Ex. 2: Distributor Agreement, at pgs. 19-20, ¶ A(2); 20, ¶ B.
[92] Ex. 20: Monahan Dep., at pgs. 20:15-22; 35:2-19; 38:11-17; 46:2-14; 65:6-17.

LEGAL\115789443\2

*v. Edwards*, 374 So. 2d 490, 492-93 (Fla. 1979). Under these circumstances, any liability that Publix attempts to impose on Snyder's would necessarily be derivative of Monahan's conduct. Where one party is exposed to liability solely as a result of another's acts, Florida law permits that party to recover from the responsible actor through indemnity or contribution. *See Rosati v. Vaillancourt*, 848 So. 2d 467, 470 (Fla. 5th DCA 2003). Accordingly, even if Snyder's were found to owe any obligation to Publix, the undisputed record establishes that Monahan—who employed, directed, and controlled the individual at issue, and who contractually agreed to indemnify Snyder's—would be responsible for that loss.[93] There is no genuine dispute of material fact on this point, and Snyder's is entitled to judgment as a matter of law on its claims against Monahan.

## IV.    CONCLUSION

For the foregoing reasons, there are no genuine issues of material fact, and Snyder's is entitled to judgment as a matter of law on all claims. The undisputed record shows this is not a case involving ambiguous or overlapping allegations; rather, the underlying complaint alleges only Publix's independent premises negligence and contains no allegations—direct or indirect—implicating Snyder's products, personnel, or operations. Accordingly, the Guaranty Agreement is not triggered, and Snyder's owes no duty to defend or indemnify. The record also establishes that Snyder's satisfied its contractual obligation to procure insurance by naming Publix as an

---

[93] Ex. 2: Distributor Agreement, at pg. 20, ¶ B; Ex. 20: Monahan Dep., at pgs. 13:13-15; 14:11-20; 20:15-22; 23:1-17; 35:2-19; 38:11-17; 46:2-14; 65:6-17; 81:21-25.

additional insured to the extent required by the Guaranty Agreement. Any dispute over coverage does not expand Snyder's contractual obligations. Because Publix cannot establish any breach of contract and the Guaranty Agreement does not apply to the loss at issue, summary judgment should be entered in Snyder's favor.

Finally, even if any liability could be imposed on Snyder's—which the record forecloses—such liability is necessarily derivative of Monahan's conduct. Under the Distributor Agreement, Monahan—not Snyder's—is responsible for the personnel and operations at issue, entitling Snyder's to judgment on its contribution and indemnity claims.

WHEREFORE, Snyder's respectfully requests that the Court enter summary judgment in its favor and grant such other relief as the Court deems just and proper.

Respectfully submitted,

**COZEN O'CONNOR**

By:  _/s/  Nicole Connors_
Nicole T. Connors, Esq.
Florida Bar No.118146
515 N. Flagler Dr., Ste. 700
West Palm Beach, FL 33401
Telephone: (561) 245-6192
nconnors@cozen.com

J. Kent Crocker, Esq.
Florida Bar No. 110344
1801 N. Military Trail, Ste. 200
Boca Raton, Florida 33431
Telephone: (305) 397-0825
jcrocker@cozen.com
*Counsel for Defendant/Third-Party Plaintiff*
*Snyder's-Lance, Inc.*

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 1, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, to all counsel of record listed on the following service list.

## SERVICE LIST

**GUNSTER, YOAKLEY & STEWART, P.A.**
Derek K. Mountford, Esq.
1 Independent Drive, Ste. 2300
Jacksonville, Florida 32202
Telephone: (904) 354-1980
dmountford@gunster.com
*Counsel for Plaintiff*

**KAPLAN ZEENA, LLP**
James M. Kaplan, Esq.
Noah E. Snyder, Esq.
2 South Biscayne Blvd., Ste. 3050
Miami, Florida 33131
Telephone: (305) 530-0800
james.kaplan@kaplanzeena.com
noah.snyder@kaplanzeena.com
*Counsel for Hartford Fire Ins. Co.*

**MURPHY & ANDERSON, P.A.**
Lawton R. Graves
1501 San Marco Blvd.
Jacksonville, Florida 32208
Telephone: (904) 598-9282
lgraves@murphyandandersonlaw.com
*Counsel for M. Monahan Distributors*

**FRIEDMAN, P.A.**
Robert H. Friedman, Esq.
340 Royal Poinciana Way, Ste. 317-202
Palm Beach, Florida 33480
Telephone: (561) 800-2110
rob@friedmanpa.com
*Counsel for Plaintiff*

**PHELPS DUNBAR, LLP**
Erin M. Raschke, Esq.
100 S. Ashley Dr., Ste. 2000
Tampa, Florida 33602
Telephone: (813) 472-7550
erin.raschke@phelps.com
*Counsel for The Continental Ins. Co.*

LEGAL\115789443\2